JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI  96814
Telephone: (808) 377-6778
Email:  justinbrackettlaw@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

Linda Taepan, on behalf of herself and all others similarly situated,

                Plaintiff,

   vs.

Medcah, Inc.

                Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 1:17-CV-

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARA-TORY, AND INJUNCTIVE RE-LIEF, EXHIBITS 1-8, and VERI-FICATION

JURY TRIAL REQUESTED

## CLASS COMPLAINT

## <u>INTRODUCTION</u>

1. The Defendant Medcah, Inc. is regularly engaged in the business of collecting debt on behalf of its clients that are the Plaintiff's original creditor, but does not own any of the accounts it collects for.

2. Given the large number of accounts that Defendant collects each year, it has established certain policies and practices to systemize its collection practices.

[ 1 ]

3.     Defendant does not own the accounts it collects.  Rather the original credi-
       tors maintain ownership, but assign the account to Defendant for collection
       purposes only.

4.     Defendant retains a percentage of the principal amount of each account it
       collects.

5.     One of Defendant's policies is to maximize its recovery on these accounts,
       and the focus of this lawsuit is Defendant's addition of its own interest to the
       accounts it collects.  Defendant does not pay any of its interest to the original
       creditors to whom the accounts are owed.

6.     Defendant's addition of interest artificially increases the amount of debt
       owed by a consumer such as Plaintiff.

7.     Many of the accounts that Defendant collects on behalf of its clients are not
       interest-bearing and oftentimes the original creditor, to whom the debt is
       owed, never seeks additional interest from the consumer; however, Defend-
       ant adds the interest for their own benefit.

8.     Defendant knows that to lawfully charge interest on a consumer account, the
       Truth in Lending Act (TILA) requires it send statements setting forth the
       rate and amount of interest it is charging. Medcah knows it does not and has
       no intention of going to the expense of providing that information to the
       Plaintiff.

9.   By increasing the amount owed each month the consumer has an incentive to take care of the account today, since the impression is that the amount will continue to increase each month.

10.   The problem with Defendant's scheme is that it is a means of collecting debt that is false, misleading, deceptive or confusing to the least sophisticated consumer. Adding interest in successive demand letters without any contractual or legal authority to do so is a false, misleading, deceptive or confusing means to collect debts.

11.   Furthermore, Defendant added an interest dollar amount to each of Plaintiff's debt collection letters, but not in its credit reporting of the same accounts, constituting a false, misleading, deceptive, or confusing means to collect debts.

12.   Since Defendant represents the amount of debt set forth in its demand letters includes interest it has added to the principal amount, it is a false, misleading, deceptive, or confusing statement of the amount of the debt owed. The use of false, misleading, deceptive or confusing means or statements of the debt owed have been banned by both Congress through the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692 et seq. (FDCPA) and the State of Hawaii through the Hawaii Unfair and Decepting Acts and Practices statutes H.R.S. § 480 (HUDAP).

13.    Medcah, Inc. uses the same means of collecting debt described above and misrepresentations of the amount of debt as part of a regular and systemic approach to collect thousands of accounts claimed to have been assigned to Defendant and alleged to be owed by hundreds, if not thousands, of Hawaii citizens. For this reason, Plaintiff is pursuing this case individually and on behalf of others who have also been pursued by Medcah by the same means or misrepresentations by defining an FDCPA Class and a Hawaiian Class.

## JURISDICTION AND VENUE

14.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to 15 U.S.C. § 1692k(d) as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

15.    This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), in its illegal efforts to collect a consumer debt.  This is also an action for damages against the Defendant for unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

16.    In addition to Plaintiff's class claims, Plaintiff also alleges individual claims against all Defendants.

[ 4 ]

17.   Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## PARTIES

18.   Plaintiff Linda Taepan (hereinafter "Plaintiff" and/or "Ms. Taepan") is a natural person who resides in Honolulu County, Hawai'i, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "Debtor" as that term is defined by Haw. Rev. Stat. § 443B-1.

19.   Medcah, Inc. (hereinafter "Medcah" or "Defendant") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Hawaii, and maintains Genevieve Freeman, 320 Uluniu Street, Suite 5, Kailua, HI 96734 as its registered agent for service of process.

20.   The FDCPA Class consists of (i) Hawaii residents; (ii) who have been sent collection letters by Medcah, Inc.; (iii) to collect a "debt" as defined by the FDCPA; (iv) that Medcah, Inc. collects on behalf of its clients, but does not own; (v) the collection letter included any amount in addition to the assigned amount of Medcah's client and Plaintiff's original creditor; and (vi) the letter was sent by Medcah, Inc. within the year preceding the filing of this action.

21.   The Hawaiian Class consists of (i) Hawaii residents; (ii) who have been sent collection letters by Medcah, Inc.; (iii) to collect a "debt" as defined by the

FDCPA; (iv) that Medcah, Inc. collects on behalf of its clients, but does not own; (v) the collection letter included any amount in addition to the assigned amount of Medcah, Inc.'s client and Plaintiff's original creditor; and (vi) the letter was sent by Medcah, Inc. within four years preceding the filing of this action.

22. Other Defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

23. Defendant has alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

24. The primary purpose of Defendant's business is the collection of debts.

25. Defendant regularly engages in the collection of consumer debts owed or due or asserted to be owed or due another, and attempts to collect them from consumers by making telephone calls, credit reporting, and sending collection letters.

26. Ms. Taepan spoke with representatives of Medcah on multiple occasions.

[ 6 ]

27.    Ms. Taepan spoke with Cathy, Matt, and other Medcah representatives.

28.    During Medcah's collection calls Medcah's representatives would often-times insist upon Ms. Taepan paying the full account balances but she would repeatedly explain that she only lived on Social Security and could not afford to make a lump sum payment.

29.    Medcah's representative threatened Ms. Taepan that more interest would accrue on her account unless she paid it off the account.

30.    Ms. Taepan's Oceanic Time Warner Cable bill was never reported to Experian until Medcah started collecting it.

## **CLASS ALLEGATIONS**

31.    Defendant collects a large number of consumer accounts each year on behalf of its clients - the Plaintiff's original creditors. To handle the volume of accounts it buys, Medcah established regular policies and procedures concerning the reporting of the debts to consumer reporting agencies and sending collection letters to people who allegedly owe the accounts. As a result of these regular policies and procedures, Medcah routinely violates state and/or federal laws.

32.    Medcah's policies and procedures include furnishing or communicating information to consumer reporting agencies that states a lower amount than the

[ 7 ]

total it is trying to collect from debtors because it does not report to the con-

sumer reporting agencies the interest it adds to these accounts and only re-

ports the original amount owed by the debtor.

33.   Medcah's policies and procedures include sending or communicating infor-

mation to consumers that states the amount of debts as being larger than the

amount its clients are actually seeking as Medcah included its own addition-

al interest, which is unlawful.

34.   Plaintiff contends that Medcah's practices and procedures violate both the

FDCPA and Hawaii law because the means used by Medcah, as described

above, are false, misleading, deceptive or confusing to the least sophisticated

consumer.

35.   Plaintiff contends that Medcah's practices and procedures violate both the

FDCPA and Hawaii law because the amounts claimed to be owed to Med-

cah, as described above, are false, misleading, deceptive or confusing to the

least sophisticated consumer.

36.   The claims that are sought to be pursued on a class basis are claims under

the FDCPA and Hawaii law.

37.   Since MEDCAH maintains records of its communications to consumer re-

porting agencies and to consumers, the persons in Hawaii who have been the

subject of these communications can be easily ascertained.

38.   Given the volume of Medcah's debt collection activity, the number of per-sons who have been the subject of Medcah's communications to consumer reporting agencies or have been sent a collection letter by Medcah makes joinder of each person impractical.

39.   Medcah's use of regular policies and procedures described above present common issues of law and fact that can be decided on a class basis.

40.   Plaintiff's claim against MEDCAH based on its regular policies and proce-dures is typical of the FDCPA and Hawaiian Classes of persons.

41.   Plaintiff's counsel is experienced in law governing the claims asserted and in consumer class actions.

42.   Questions of law and fact common to the Plaintiff Class exist and predomi-nates over questions affecting only individual members, including, *inter alia*, the following:

   a.   Whether Defendant violated 15 U.S.C. §§ 1692e, e(2), e(10), and 1692f by charging and attempting to collect unlawful in-terest from Plaintiff and Class members;

   b.   Whether Defendant violated Haw. Rev. Stat. §§ 443B-18 and 443B-19 by charging and attempting to collect unlawful inter-

est from Plaintiff and Class members; and

c.      Whether Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices for purposes of Haw. Rev. Stat. § 480-2.

43.   The claims asserted by the named Plaintiff in this action are typical of the claims of the members of the Plaintiff Class as defined above because, upon information and belief, Defendant uses form collection letters that each charge pre-judgment interest and are routinely sent to consumers in the State of Hawai'i.  The claims of the Plaintiff and of the Plaintiff Class originate from the same conduct, practice, and procedure, on the part of Defendant. Plaintiff possesses the same interests and has suffered the same injuries as each Class member.  There are no individual facts which distinguish the Plaintiff from other Class members that received debt Collection Letters which added unlawful interest from Defendants.

44.   The named Plaintiff will fairly and adequately represent and protect the interest of the members of the Plaintiff Class because she has no interest antagonistic to the class she seeks to represent, and because the adjudication of her claims will necessarily decide the identical issues for other class members.  Whether Defendant's debt Collection Letter violates the FDCPA and state law is an issue that will be decided for all other consumers with similar

[ 10 ]

letters.  There is nothing peculiar about the Plaintiff's situation that would make her inadequate as class representative.  Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

45.  A class action is superior to individual actions based on these consumer claims because many of the consumers affected by MEDCAH's practices may not be in a position to pursue individual claims and the remedial nature of the laws upon which the claims are based are served by allowing a class action.

FACTS SHOWING MEDCAH'S POLICIES AND PROCEDURES

### *Medcah's Reporting on Ms. Taepan's Credit*

46.  Ms. Taepan pulled a report of her credit history from Experian on October 20, 2016. (See attached Exhibit 1).

47.  Experian is a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f), and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

48.  Ms. Taepan's Experian report showed that Defendant was communicating information to Experian that Plaintiff owed the alleged debts.

49. Defendant has been communicating information regarding the debts to Experian since at least May 2011. (Exhibit 1).

50. The reporting of the alleged debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

51. The October 20, 2016 credit report shows that Defendant demanded $47.00 on the account ending in 0559 as of September 2016. (Exhibit 1).

52. The October 20, 2016 credit report lists The Radiology Group as the Original Creditor for the account ending in 0559. (Exhibit 1).

53. Defendant demanded $598.00 on the account ending in 3568 as of October 2016. (Exhibit 1).

54. The October 20, 2016 credit report lists Oceanic Time Warner Cable as the Original Creditor for the account ending in 3568.

### *November 9, 2016 Collection Letter from Defendant Medcah, Inc.*

55. Ms. Taepan received a collection letter from Defendant dated November 9, 2016. (See attached Exhibit 2).

56. The November 9, 2016 collection letter from Defendant Medcah identified Oceanic Time Warner Cable and The Radiology Group as the original creditors with account numbers ending in 3568 and 0559, respectively. (Exhibit 2).

57. In the November 9, 2016 collection letter, Defendant Medcah demanded the

"Tot Owing" of $671. 47 for the two accounts.

58.   The November 9, 2016 letter lists an "Assg Amt" of $597.71 for the Oceanic
      Time Warner Cable account ending in 3568. Defendant added interest of
      $150.34 and listed a "Tot Amt Pd" of $150.00 for the account ending in
      3568 resulting in a "Tot Owing" of $598.05. (Exhibit 2).

59.   The November 9, 2016 letter lists an "Assg Amt" of $46.67 for The Radiol-
      ogy Group account ending in 0559. Defendant added interest of $26.75 to
      the account ending in 0559 resulting in a "Tot Owing" of $73.42.

60.   The November 9, 2016 collection letter asserts, "This is an attempt to collect
      a debt. Any information obtained will be used for that purpose." (Exhibit 2)

61.   A quick review of the above accounts shows Defendant adding interest to
      these various accounts before entry of any judgment. (Exhibit 2).

62.   By communicating to Ms. Taepan that she owed a different and greater
      amount than what Ms. Taepan actually owes, Defendant violated 15 U.S.C.
      §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(8), and 1692e(10).


### _March 8, 2017 Collection Letter from Defendant Medcah, Inc._

63.   Ms. Taepan received a collection letter from Defendant dated March 8,
      2017. (See attached Exhibit 3).

64.   The March 8, 2017 collection letter from Medcah identified Oceanic Time

Warner Cable and The Radiology Group as the original creditors with account numbers ending in 3568 for Oceanic Time Warner and 0559 and 1103 for The Radiology Group. (Exhibit 3).

65. In the March 8, 2017 collection letter, Defendant Medcah demanded the "Tot Owing" of $480.77 for the three accounts.  (Exhibit 3).

66. The March 8, 2017 collection letter includes an "Account Ledger" with the following amounts, in pertinent part:

| Creditor | "Assg Amt." | "Int. Owing" | "Tot Amt Pd" | "Tot Owing" |
|---|---|---|---|---|
| Oceanic Time Warner<br><br>Medcah Account #: …3568 | $597.71 | $169.07 | ($286.01) | $480.77 |
| The Radiology Group<br><br>Medcah Account #: …0559 | $46.67 | $27.32 | ($73.99) | $0.00 |
| The Radiology Group<br><br>Medcah Account #...1103 | $6.48 | $0.03 | ($6.51) | $0.00 |
| TOTAL | $650.86 | $196.42 | ($366.51) | $480.77 |

(See attached Exhibit 3).

67. The March 8, 2017 collection letter asserts, "This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Exhibit 3).

68. A quick review of the above accounts shows Defendant adding interest to these various accounts before entry of any judgment. (Exhibit 3).

[ 14 ]

### *July 17, 2017 Collection Letter from Defendant Medcah, Inc.*

69.   Ms. Taepan received a collection letter from Defendant dated July 17, 2017.

(See attached Exhibit 4).

70.   The July 17, 2017 collection letter from Defendant Medcah identified Spec-

trum FKA Oceanic and The Radiology Group as the original creditors with

account numbers ending in 3568 for Spectrum FKA Oceanic and 0559 and

1103 for The Radiology Group. (Exhibit 4).

71.   In the July 17, 2017 collection letter, Defendant Medcah demanded the "Tot

Owing" of $214.42 for the three accounts.  (Exhibit 4).

72.   The July 17, 2017 collection letter includes an "Account Ledger" with the

following amounts, in pertinent part:

| Creditor | "Assg Amt." | "Int. Ow-ing" | "Tot Amt Pd" | "Adjs" | "Tot Owing" |
|---|---|---|---|---|---|
| Spectrum FKA Oceanic<br><br>Medcah Ac-count #: …3568 | $597.71 | $180.73 | ($386.01) | ($178.01) | $214.42 |
| The Radiology Group<br><br>Medcah Ac-count #: …0559 | $46.67 | $27.32 | ($73.99) | $0.00 | $0.00 |
| The Radiology Group | $6.48 | $0.03 | ($6.51) | $0.00 | $0.00 |

| Medcah Account #...1103 | | | | | |
|---|---|---|---|---|---|
| TOTAL | $650.86 | $208.08 | ($466.51) | ($178.01 | $214.42 |

(See attached Exhibit 4).

73. The July 17, 2017 collection letter mysteriously lists an "adjs" of ($178.01). (Exhibit 4).

74. The July 17, 2017 collection letter asserts, "This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Exhibit 4).

75. A quick review of the above accounts shows Defendant adding interest to these various accounts before entry of any judgment. (Exhibit 4).

### *August 14, 2017 Collection Letter from Defendant Medcah, INC.*

76. Ms. Taepan received a collection letter from Defendant Medcah dated August 14, 2017 through the Legal Aid Society of Hawaii, who Ms. Taepan had turned to in effort to understand Medcah's billings. (See attached Exhibit 5)

77. The August 14, 2017 collection letter identified a Medcah Account Number with the last four digits ending in 3568. (Exhibit 5).

78. The August 14, 2017 collection letter included an "Interest and payment calculation sheet" with the following amounts, in pertinent part:

| DATE | PAYMENT | PRINCIPAL CREDIT | INTEREST CHARGE | INTEREST CREDIT | BALANCE |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 5/6/14 | | | | | $597.71 |
| 9/8/16 | | | $140.18 | | $737.89 |
| 9/8/16 | $50.00 | | | $50.00 | $687.89 |
| 10/6/16 | | | $4.59 | | $692.48 |
| 10/6/17 | $50.00 | | | $50.00 | $642.48 |
| 11/7/16 | | | $5.24 | | $647.72 |
| 11/7/16 | $50.00 | | | $50.00 | $597.72 |
| 1/9/17 | | | $10.33 | | $608.05 |
| 1/9/17 | $36.01 | $25.68 | | $10.33 | $572.04 |
| 2/8/17 | | | $4.70 | | $576.74 |
| 2/8/17 | $50.00 | $45.30 | | $4.70 | $526.74 |
| 3/8/17 | | | $4.04 | | $530.78 |
| 3/8/17 | $50.00 | $45.96 | | $4.04 | $480.78 |
| 4/6/17 | | | $3.82 | | $484.60 |
| 4/6/17 | $50.00 | $46.18 | | $3.82 | $434.60 |
| 5/8/17 | | | $3.81 | | $438.41 |
| 5/8/17 | $50.00 | $46.19 | | $3.81 | $388.41 |
| 6/28/17 | $178.01 | $178.01 | | | $210.40 "Equip Returned" |

(See attached Exhibit 5).

[ 17 ]

79.   The August 14, 2017 collection letter asserts, "This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Exhibit 5).

80.   The August 14, 2017 collection letter lists an "Assigned Amount" of $597.71. (Exhibit 5).

81.   A quick review of the above account shows Defendant adding interest to the account before entry of any judgment.

82.   The August 14, 2017 collection letter is signed by Jennifer Medeiros, "Legal Manager" for Defendant Medcah. (Exhibit 5).

### *September 27, 2017 Collection Letter from Defendant Medcah, INC.*

83.   Ms. Taepan received a collection letter from Defendant Medcah dated September 27, 2017. (See attached Exhibit 6).

84.   The September 27, 2017 collection letter from Defendant Medcah identified Spectrum FKA Oceanic Time Warner Cable and The Radiology Group as the original creditors with account numbers ending in 3568 for Spectrum and 0559 and 1103 for The Radiology Group. (Exhibit 6).

85.   The September 27, 2017 collection letter asserts, "The accounts below are no longer being handled by our office. If you need further information please contact the original creditor(s) directly." (Exhibit 6).

86.   The September 27, 2017 collection letter asserts, "This is an attempt to collect a debt by a debt collector. Any information obtained will be used for

that purpose. (Exhibit 6).

87.     The September 27, 2017 collection letter is signed by Jennifer Medeiros, "Legal Manager" for Defendant Medcah. (Exhibit 6).

### *Undated Collection Letter from Defendant Medcah, Inc.*

88.     Ms. Taepan received a collection letter from Defendant Medcah with no date. (See attached Exhibit 7).

89.     The undated collection letter from Defendant Medcah identifies Oceanic Time Warner Cable and The Radiology Group as the original creditors with account numbers ending in 3568 and 0559, respectively. (Exhibit 7).

90.     The undated collection letter from Defendant Medcah includes an "Account Summary" with the following amounts, in pertinent part:

| CREDITOR | "Assg Amt" | "Int. Owing" | "Tot Amt Pd" | "Tot Ow-ing" |
|---|---|---|---|---|
| Oceanic Time Warner Cable  Medcah Account #: …3568 | $597.71 | $155.09 | ($150.00) | $602.80 |
| The Radiology Group  Medcah Account#: …0559 | $46.67 | $27.12 | ($50.00) | $23.79 |
|  | $644.38 | $182.21 | ($200.00) | $626.59 |

(Exhibit 7).

91.     The undated collection letter asserts, "This is an attempt to collect a debt.

Any information obtained will be used for that purpose." (Exhibit 7).

92.   A quick review of the above accounts shows Defendant adding interest to these accounts before entry of any judgment. (Exhibit 7).

### *Payment History*

93.   In or about October 2016, Ms. Taepan made payment arrangements with Defendant Medcah.

94.   The Payment Plan was in the amount of $50.00 per month by check on the 4th of each month.

95.   Ms. Taepan began making payments per the Payment Plan in October 2016.

96.   Ms. Taepan paid $50.00 in October 2016.

97.   Ms. Taepan's October 2016 payment was applied entirely to Medcah's interest.

98.   Ms. Taepan paid $50.00 in November 2016.

99.   Ms. Taepan's November 2016 payment was applied entirely to Medcah's interest.

100.  On December 4, 2016, Ms. Taepan paid the amount of $50.00 towards the Medcah account ending in 0559.

101.  Ms. Taepan's December 4, 2016 payment was applied entirely to Medcah's interest.

102.  On January 3, 2016, Ms. Taepan paid the amount of $60.00 towards the

Medcah accounts ending in 0559 (The Radiology Group) and 3568 (Spectrum).

103.   On February 3, 2017, Ms. Taepan paid the amount of $50.00 towards the Medcah account ending in 3568.

104.   On March 3, 2017 Ms. Taepan paid the amount of $50.00 towards the Medcah account ending in 3568.

105.   On April 3, 2017 Ms. Taepan paid the amount of $50.00 towards the Medcah account ending in 3568.

106.   On May 3, 2017, Ms. Taepan paid the amount of $50.00 towards the Medcah account ending in 3568.

107.   Ms. Taepan requested a statement with a breakdown of how her payments were applied, but Medcah refused to provide it. Instead, they only provided an account ledger.

108.   Although Ms. Taepan worked with Medcah to arrange a payment plan wherein she was to submit her payment after receipt of her Social Security check on the 4th of each month, Medcah repeatedly harassed Ms. Taepan by calling her on the 4th, 5th, and 6th of each month, which was very annoying to Ms. Taepan.

109.   Medcah paid its interest first before applying any of Ms. Taepan's payments to her principal balances.

110.   None of the original creditors demanded any interest from Ms. Taepan, and none of her statements show the imposition of any interest to the alleged accounts by the original creditors.

111.   Ms. Taepan has suffered actual damages of postage, copy costs, mileage costs to attend appointments with her attorney, and emotional distress due to Defendant's actions.

**CAUSES OF ACTION**

***COUNT ONE:***
***VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT***
***INDIVIDUALLY AND ON BEHALF OF THE FDCPA CLASS***

**FIRST VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT:**
**FALSE OR MISLEADING REPRESENTATIONS**

112.   The acts of Defendant constitute violations of the Fair Debt Collection Practices Act.  Defendant's violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

113.   Medcah demanded only $47 on Ms. Taepan's The Radiology Group account in September 2016 (*See* Exhibit 1), but then demanded an additional $26.75 in interest on the same account on November 9, 2016 (*See* Exhibit 2). Therefore, Medcah effectively increased the balance owed by 56% in just a

little more than one month!

114.   Further, Defendant's use of false, deceptive, or misleading representations is abundantly clear since Defendant's demand interest on accounts that do not incur interest.

115.   Ms. Taepan is confused as to how Defendant calculated the amounts owed and what authority it has to demand any interest on these accounts.

116.   A calculation of the time between the letters and the amounts demanded in the letters shows that Defendant is applying an unknown rate of interest.

117.   By assigning different account balances and unknown rates of interest to the underlying accounts, Defendant has confused Ms. Taepan as to what amount of money she owes on these accounts.

118.   By assigning different account balances and interest rates to the same account, none of which are the applicable contractual rate of interest, Defendant has misled Ms. Taepan as to what amount of money she owes on the accounts.

119.   By providing only the "Int. Owing" amount on the account ledgers, Ms. Taepan does not know what rate of interest Defendant is adding on to her accounts.

120.   The collection letters and credit reporting by Defendant demands very odd amounts from Ms. Taepan and she is confused as to how Defendant calculated said amounts and what authority it has to demand unfamiliar and in-

consistent rates of interest.

121.    Defendant assigned new account numbers. *See* Exhibits.

122.    By changing the account numbers, Defendant did mislead and confuse Ms. Taepan as to which account it was collecting.

123.    The amounts reported by Defendant in Ms. Taepan's Experian credit report do not match the amounts stated in its ledger, which is confusing and misleading to Ms. Taepan.

124.    Because the total amount stated in her ledger and the amount Defendant reported to Experian do not match, Ms. Taepan does not know which amount is her accurate debt, which constitutes as deceptive and misleading and a clear violation of 15 U.S.C. § 1692e.

125.    Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

126.    Medcah did not substantively treat Plaintiff's account any different than the accounts of the FDCPA class members.

## SECOND VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## INDIVIDUALLY AND ON BEHALF OF THE FDCPA CLASS
## FALSE OR MISLEADING REPRESENTATIONS

127.    Defendant's violations of the FDCPA also include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the

character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

128.   The actual amount owed on the alleged debts is certainly in question.  It is overly confusing as to what amount is owed on these accounts since the amounts have mysteriously increased at odd rates throughout Defendant's collection of these accounts.

129.   Defendant has charged interest on these accounts regardless of whether they are utility bills or medical bills, and more importantly, whether they were originally interest bearing or not.

130.   By demanding a rate of interest that was never originally applied to the accounts, Defendant has misled Ms. Taepan as to what amount of money, if any, she owes on these accounts.

131.   Defendant is attempting to keep Ms. Taepan confused as to the amount owed so that if she were to make payments on these accounts she would never know the actual amount owed, and instead would keep paying indefinitely on interest or other charges that were never legally owed by her.

132.   Defendant made false, deceptive, or misleading representations in connection with the amount of Ms. Taepan's debt, whereas it increased its demands by adding interest to accounts that never allowed for the accrual of said interest.

133. Ms. Taepan made monthly payments between October 2016 to May 2017.

134. She called Medcah multiple times to find out how her payments are being applied throughout her three accounts and also asked how long she would have to continue to pay, but Medcah asserted they did not have anything like that and instead sent her an account ledger, which still did not address Ms. Taepan's concern.

135. By not providing Ms. Taepan an explanation of how her payments are being distributed throughout her accounts, Ms. Taepan does not know if her payments are being paid towards her principal amount or mainly to the interest, which is misleading her on whether or not her payments are being properly executed.

136. Medcah included an "Adjs" amount of $178.01 on its account ledger dated July 17, 2017 for Ms. Taepan's Medcah account ending in 3568 to which Defendant never stated what it was for; thus Ms. Taepan is confused as to what the adjustment is for.  She believes this is related to the return of her equipment to Spectrum, but it has never been made clear to Ms. Taepan.

137. Because Defendant refused to provide an explanation on how her payments are being distributed throughout her accounts, Defendant has misled Ms. Taepan the character and amount of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

138. Moreover, the amounts reported by Defendant in Ms. Taepan's Experian credit report seem to only be the principal amount and do not include the interest Defendant asks for in its account ledgers; thus, Ms. Taepan is confused as to the actual amount she owes on these accounts.

139. Medcah's addition of interest to Plaintiff's account and removing these interests when it reports the alleged debt to the credit reporting agencies were not unique but followed its policies and procedures.

140. Medcah did not substantively treat Plaintiff's account any different than the accounts of the FDCPA class members.

**THIRD VIOLATION OF THE
FAIR DEBT COLLECTION PRACTICES ACT:
INDIVIDUALLY AND ON BEHALF OF THE FDCPA CLASS
UNFAIR OR UNCONSCIONABLE MEANS TO COLLECT OR ATTEMPT
TO COLLECT A DEBT**

141. Defendant's violations of the FDCPA also include any unfair or unconscionable means to collect or attempt to collect the alleged debt, which is a violation of 15 U.S.C. §1692f.

142. In October 2016, Ms. Taepan entered into a payment plan with Defendant. The payment plan includes that Ms. Taepan makes monthly payments of $50 and will send it through check on the fourth of each month. However, Defendant repeatedly called Ms. Taepan on the fourth, fifth, of the month, specifically, but not limited to, May 4th, 2017 stating Defendant have not re-

ceived her payment, which is harassing to Ms. Taepan and an unconsciona-
ble means to collect the alleged debt.

143. Defendant entered into an agreement or payment plan with Ms. Taepan on
October 2016 and Ms. Taepan has been making consistent monthly pay-
ments from October 2016; thus, the May 4th, 2017 and other phone calls
from Defendant on the fourth, fifth, or sixth of the month were not necessary
and were an unfair and unconscionable means to collect the alleged debt – a
clear violation of 15 U.S.C. §1692f.

144. Medcah did not substantively treat Plaintiff's account any different than the
accounts of the FDCPA class members.

**FOURTH VIOLATION OF THE**
**FAIR DEBT COLLECTION PRACTICES ACT:**
**INDIVIDUALLY AND ON BEHALF OF THE FDCPA CLASS**
**COLLECTION OF ILLEGITIMATE INTEREST**

145. Defendant's violations of the FDCPA also include the collection of any
amount (including any interest, fee, charge, or expense incidental to the
principal obligation) unless such amount is expressly authorized by the
agreement creating the debt or permitted by law, which is a violation of 15
U.S.C. §1692f(1).

146. The communications from Defendant assert that different balances are owed,
explicitly asserting it is adding interest to the accounts without any contrac-

tual or legal basis to do so.

147.   As of the date of this case being filed Defendant has not obtained a judgment against Ms. Taepan and thus is not entitled to any statutory interest under Hawaii law.

148.   Defendant knew it had no authority, either by contract or statute, to add interest to the accounts.

149.   The amounts sought by Defendant in their various communications include rates of interest not expressly authorized by the agreements creating the debt or permitted by law, and thus were demands in direct violation of 15 U.S.C. § 1692f(1).

150.   Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

151.   Medcah did not substantively treat Plaintiff's account any different than the accounts of the FDCPA class members.

### FIFTH VIOLATION OF THE
### FAIR DEBT COLLECTION PRACTICES ACT:
### INDIVIDUALLY AND ON BEHALF OF THE FDCPA CLASS
### HARASSMENT OR ABUSE

152.   Defendant's violations of the FDCPA also includes engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person, which is a violation of 15 U.S.C. §1692d.

[ 29 ]

153. Defendant's phone calls to Ms. Taepan on the fourth, fifth, and/or sixth of the month, specifically, but not limited to, May 4th, 2017, are abusive or harassing to Ms. Taepan as she was making consistent monthly payments from October 2016 pursuant to her payment plan; thus, phone calls asserting she had not made her payment were harassing to her.

154. Medcah's unnecessary phone calls on the fourth, fifth, and/or sixth of each month are a clear violation of 15 U.S.C. §1692d because they were harassing to Ms. Taepan.

155. Medcah's phone calls to debtors to collect debt was not unique but followed its policies and procedures.

156. Medcah did not substantively treat Plaintiff's account any different than the accounts of the FDCPA class members.

## COUNT TWO:
## VIOLATIONS OF THE HAWAI'I REVISED STATUTES

157. A consumer may bring an action based upon unfair or deceptive acts or practices. Haw. Rev. Stat. §480-2.

158. Any person may bring an action based on unfair methods of competition declared unlawful by Haw. Rev. Stat. §480.

159. Ms. Taepan, a consumer, brings this action individually and on behalf of the Hawaiian Class based upon Defendant's unfair or deceptive acts or practices

as well as their unfair methods of competition.

160. Ms. Taepan has incurred actual damages as a result of Defendant's acts and practices.

161. An injunction is sought to prevent the Defendant from engaging in actions that violate Hawaii law.

## FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

162. The acts of Defendant constitute violations of the Hawai'i Revised Statutes. Violations include, but are not limited to, any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.  Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

163. The underlying debt is disputed.

164. The letters from Defendant demand very odd amounts from Ms. Taepan and she is confused as to how Defendant calculated said amounts and what authority it has to demand unfamiliar rates of interest.

165. Ms. Taepan made monthly payments between October 2016 to May 2017. She called Medcah multiple times to determine how her payments are being applied throughout her three accounts, but Medcah stated that they did not have any way to answer her question and instead sent her an account ledger,

which still does not address Ms. Taepan's concerns as to how the balance was calculated.

166. By not providing Ms. Taepan an explanation of how her payments are being distributed throughout her accounts and how interest accumulated on her accounts, Ms. Taepan does not know if her payments are ever being applied to her principal balances or just to Medcah's interest, which misleads her about whether or not her payments are being properly applied.

167. Medcah included an "Adjs" amount of $178.01 on its account ledger dated July 17, 2017 for Ms. Taepan's Medcah account ending in 3568 to which Defendant never stated what it was for; thus Ms. Taepan is confused as to what the adjustment is for.

168. Because Defendant refused to provide an explanation on how her payments are being distributed throughout her accounts and included an "Adjs" amount that does not state for what purpose, Defendant has misled Ms. Taepan the character and amount of the alleged debt.

169. Moreover, the amounts reported by Defendant in Ms. Taepan's Experian credit report seems to only be the principal amount and does not include the interest Defendant asks for additionally in its account ledgers; thus, is confusing to Ms. Taepan as she does not know why they would not include the total amount Defendant is seeking.

170. Furthermore, the balances increase at rates of interest that do not comply with the terms of any initial contract.

171. Defendant never states the rate of interest being applied to the accounts in any of its correspondences.

172. By assigning different account balances and unknown rates of interest to the underlying accounts, Defendant has made one or more false representations or implications of the character, extent, or amount of money Ms. Taepan owes on these accounts.

173. By attempting to collect unknown and unauthorized amounts through false and deceptive communications, Defendant has deceived Ms. Taepan as to what amount of money she owes on these accounts.

174. Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

175. Medcah did not substantively treat Plaintiff's account any different than the accounts of the Hawaiian class members.

176. MEDCAH also added interest to communications to the Hawaiian class members.

177. By assigning different account balances and interest rates to the same account, none of which are the applicable contractual rate of interest, Defendant made one or more false representations or implications of the character,

extent, or amount of money Ms. Taepan and the Hawaiian Class owes.

178.   By attempting to collect unknown and unauthorized amounts through false and deceptive communications, Defendant has deceived Ms. Taepan and the Hawaiian Class members as to what amount of money they owe on this account.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

179.   Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligation violates Haw. Rev. Stat. § 443B-18(8).

180.   Upon information and belief, Ms. Taepan asserts that Defendant did not have authority to add its additional fees to the originating accounts.

181.   Defendant demanded unwarranted interest, fees or charges, as explained in detail above, when in fact those fees or charges may not legally be added to the existing obligations.

182.   Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

183.   Medcah did not substantively treat Plaintiff's account any different than the

accounts of the Hawaiian class members.

184.   Medcah also added interest to communications to the Hawaiian class members.

### THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

185.   Defendant's violations of the Hawai'i Revised Statutes also include the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law.  Such conduct violates Haw. Rev. Stat. § 443B-19(2).

186.   Upon information and belief, Ms. Taepan asserts that Defendant did not have authority to impose additional interest or fees on the originating accounts.

187.   By assessing unwarranted interest, fees or charges, Defendant has demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

188.   Defendant's collection of additional interest and/or fees are collection attempts for amounts not expressly authorized by the agreement.

189. By assigning different account balances and interest rates to accounts that never accrued interest in the first place, Defendant made a false representation or implication of the character, extent, or amount of money Ms. Taepan owes.

190. Ms. Taepan asserts that her original contracts did not allow for the imposition of interest at the rates applied to the accounts by Defendant.

191. Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

192. Medcah did not substantively treat Plaintiff's account any different than the accounts of the Hawaiian class members.

193. Medcah also added interest to communications to the Hawaiian class members.

## FOURTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

194. Defendant's acts constitute violations of the Hawai'i Revised Statutes.  Violations include, but are not limited to, the collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered.  Such conduct is a violation of Haw. Rev. Stat. § 443B-19(3).

195. Upon information and belief, Ms. Taepan asserts that Defendant did not have authority to impose additional fees such as the "Int Owing" amount on

the account ledgers

196. Because Ms. Taepan's original accounts are not interest-bearing and Defendant included an interest amount on her ledgers, she is confused as to the purpose of the interest Defendant seeks. This amount may be for Defendant's collection agency's fees.

197. Defendant is attempting to collect its collection agency fees or charges for services rendered from an alleged debtor, and is thus violating Haw. Rev. Stat. § 443B-19.

198. Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

199. Medcah did not substantively treat Plaintiff's account any different than the accounts of the Hawaiian class members.

200. Medcah also added interest to communications to the Hawaiian class members.

## FIFTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

201. The collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless

the interest or incidental fee, charge, or expense is expressly authorized by law is a violation of Haw. Rev. Stat. § 443B-19(4).

202. The communications from Defendant demanded amounts, such as the interest amount, that Ms. Taepan did not owe pursuant to the agreement between her and the original creditors or legally chargeable to her.

203. Medcah's addition of interest to Plaintiff's account was not unique but followed its policies and procedures.

204. Medcah did not substantively treat Plaintiff's account any different than the accounts of the Hawaiian class members.

205. MEDCAH also added interest to communications to the Hawaiian class members.

206. As a result of Defendant's actions, Ms. Taepan and Class are entitled to an injunction:

   a. prohibiting the Defendant from communicating to a member of the Hawaiian class any claim for interest or fees on debts it allegedly acquires when said claim for interest has been waived, it fails to comply with either the Truth in Lending Act or Regulation Z to be entitled to charge the interest, or the agreement does not permit the recovery of interest alleged to be due by the Defendant; and

   b. mandating that the Defendant provide notice to each member of

the Hawaiian Class that its prior communications that sought interest after: 1) any claim for interest had been waived; 2) Defendant did not comply with the Truth in Lending Act and Regulation Z to be entitled to charge the interest; or 3) the agreement did not permit the recovery of interest alleged to be due by the Defendant were false and should be disregarded; and

   c.  mandating that the Defendant return all amounts that it collected from any member of the Hawaiian Class for interest when any claim for interest had been waived, Defendant did not comply with the Truth in Lending Act and Regulation Z to be entitled to charge any interest, or the agreement did not permit the recovery of interest alleged to be due by the Defendant.

207.  The Hawaiian Class have been injured and are entitle to an award of statutory damages.

## **TRIAL BY JURY**

208.  Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. Amend. 7,  Fed. R. Civ. P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant and in favor of the Plaintiff as follows:

[ 39 ]

a)     Declaratory judgment that Defendant violated Ms. Taepan's rights under the Fair Debt Collection Practices Act;

b)     Declaratory judgment that Defendant violated Ms. Taepan's rights under the Hawai'i Revised Statutes;

c)     Certify the FDCPA Class a proposed or subsequently amended and appoint Plaintiff as class representative and his counsel as Class Counsel;

d)     Injunctive relief ordering Defendant to cease and desist from adding any interest to any account it services unless, and until, it has reviewed the original contract signed by the alleged debtor;

e)     Injunctive relief ordering Defendant to cease and desist from adding any pre-judgment interest to any account it services unless, and until, it has obtained a court ordered judgment against the alleged debtor;

f)     That Plaintiff and the FDCPA class be awarded statutory damages pursuant to 15 U.S.C. § 1692k(a) against Defendant in an amount to be determined at a trial by a jury;

g)     That Plaintiff and the FDCPA class be awarded actual damages pursuant to 15 U.S.C. §1692k(a)(1);

h)     That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

i)      That Plaintiff and the Hawaiian Class be granted an injunction as set forth herein pursuant to Haw. Rev. Stat. §480-13(b)(2);

j)      That Plaintiff and the Hawaiian Class be awarded actual damages pursuant to Haw. Rev. Stat. § 480-13 in an amount to be determined by a jury at trial;

k)      That Plaintiff and the Hawaiian Class be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. § 480-13;

l)      That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat. § 480-13;

m)      That the Court declare all defenses raised by Defendant to be insufficient; and

n)      Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Respectfully submitted this the 9th day of November 2017.

*/s/ Justin A. Brackett*
Justin A. Brackett, #9954
Attorney for Plaintiff
515 Ward Avenue
Honolulu, HI 96814

[ 41 ]

(808) 377-6778
justinbrackettlaw@gmail.com